# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF AMERICA,<br><br>                    Plaintiff,<br><br>    v.<br><br>BOJ OF WNC, LLC; BIG SOUTH RESTAURANT GROUP LLC, D/B/A RIGSBY'S SMOKED BURGERS, WINGS & GRILL; AND MICHAEL GODEY,<br><br>                    Defendants. | Civil Action No.: 1:26-cv-77<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br>**(Non-Jury)** |

Plaintiff, Selective Insurance Company of America ("Selective"), by and through its undersigned counsel, seeks declaratory relief against Defendants BOJ of WNC, LLC ("BOJ"), Big South Restaurant Group, LLC, D/B/A Rigsby's Smoked Burgers, Wings & Grill ("Big South"), and Michael Goedy ("Godey") (together, "Defendants") and alleges and shows as follows:

## NATURE OF THE ACTION

1.　　This action seeks a declaratory judgment and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 with respect to whether a certain insurance policy issued by Selective to Named Insured BOJ and Big South (collectively, the "Insured") to afford liability coverage for identified Rigsby's restaurants operating in South Carolina ("Rigsby's SC Restaurants") obligates Selective to defend BOJ and Godey against a lawsuit asserting claims arising from alleged workplace sexual harassment at a Bojangles restaurant located in North Carolina.

2. This action also seeks reformation of the subject policy to reflect the parties' mutual underwriting intent that the policy afford coverage only in connection with the identified Rigsby's SC Restaurants.

## **THE PARTIES**

3. Selective is a New Jersey corporation with its principal place of business located at 40 Wantage Avenue, Branchville, New Jersey 07890. Selective is authorized to transact business and has transacted business in North Carolina.

4. Upon information and belief, BOJ is a limited liability company that owns and operates numerous restaurants throughout the Southeast, including numerous Bojangles restaurants located in North Carolina and other states and several Rigsby's restaurants located in South Carolina. Upon information and belief, BOJ's principal place of business is located at 131 Glen Bridge Road, Arden, North Carolina 28704.

5. Upon information and belief, BOJ has two members, Jefferey Rigsby, who is a citizen and resident of the State of North Carolina, and Randal Odom, who is a citizen and resident of the State of South Carolina.

6. Upon information and belief, Big South is a limited liability company and a wholly-owned subsidiary of Defendant BOJ, with its principal place of business at 131 Glen Bridge Road, Arden, North Carolina 28704.

7. Upon information and belief, Big South has two members, Jeffrey Risgby and Kimberly Rigsby, both of whom are citizens and residents of the State of North Carolina.

8. Defendant Godey is an individual who, upon information and belief, is a citizen and resident of the State of North Carolina.

## JURISDICTION AND VENUE

9.      The amount in controversy exceeds seventy-five thousand and 00/100 ($75,000) dollars, exclusive of interest and costs, and there is complete diversity of citizenship; therefore, this Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332 (a)(1).

10.      Venue is proper under 28 U.S.C. § 1391 because the Defendants reside in this judicial district and a substantial part of the events giving rise to this claim occurred in this district.

## THE UNDERLYING LAWSUIT

11.      BOJ and Godey have been named as defendants in an underlying personal injury action captioned *Jane Doe 1 and Jane Doe 2 both minors appearing under pseudonyms by and through their Guardian Ad Litem Jill Berman v. BOJ of WNC, LLC; Bojangles Opco, LLC; and Michael Godey*, and filed in the General Court of Justice, Superior Court Division, Haywood County, North Carolina, Case No. 25CV000802-430 (the "Underlying Lawsuit" or "Underlying Complaint"). A true and correct copy of the Underlying Complaint is appended hereto as **Exhibit A.**

12.      In the Underlying Complaint, plaintiffs (together, "Minor Plaintiffs") assert claims of negligence against BOJ and Godey arising out of the alleged sexual assault and exploitation of Minor Plaintiffs while employed at a Bojangles restaurant located on Dellwood Road in Waynesville, North Carolina (the "NC Bojangles").

13.      The Underlying Complaint alleges that Minor Plaintiffs were sexually abused and exploited by the general manager of the NC Bojangles, Dylan Sain, who used his position of authority over Minor Plaintiffs to commit such abuse and exploitation.

14.      The Underlying Complaint alleges that the subject abuse of Minor Plaintiffs took place at the NC Bojangles during work hours "while the restaurant was open and operating."

3

15. The Underlying Complaint does not identify the precise dates of Minor Plaintiffs' alleged sexual abuse and exploitation, though it alleges Minor Plaintiffs started working at the NC Bojangles in or about April 2024.

16. The Underlying Complaint alleges that during the relevant time period, the NC Bojangles was owned, operated and/or managed by BOJ and that Godey was employed by BOJ and/or BOJ's franchisor (also named as a defendant) as a "Unit Director" who had responsibility for overseeing the NC Bojangles.

17. The Underlying Complaint alleges that "multiple employees" raised suspicions and concerns with Godey and that, despite Godey's direct knowledge of concerns that Sain was sexually abusing and exploiting Minor Plaintiffs, Godey did nothing to protect them.

18. The Underlying Complaint alleges that despite actual knowledge of the sexual abuse and exploitation of Minor Plaintiffs, BOJ and the franchisor did nothing to stop it or to protect Minor Plaintiffs from "its/their pedophile employee."

19. The Underlying Complaint alleges that the employees, agents and/or representatives who owed a duty of reasonable care were acting as employees and/or agents of BOJ and/or its franchisor and were acting within the scope of their employment and/or agency, such that BOJ and/or its franchisor are vicariously liable for the acts of such employees, agents, and/or representatives.

20. The Underlying Complaint alleges that BOJ and Godey were negligent in their own right in various respects, including: failing to adequately monitor and supervise Minor Plaintiffs and Sain while they were present and working at the NC Bojangles; failing to adequately train their employees or agents on the protocols for recognizing, reporting and preventing sexual abuse and sexual harassment in the workplace; failing to protect Minor Plaintiffs from being sexually

4

abused and exploited in the workplace by one of their managers; failing to intervene when they knew or should have known of the sexual abuse and exploitation of Minor Plaintiffs by the NC Bojangles' General Manager; and failing to report the abuse and exploitation as required by North Carolina law.

## THE SELECTIVE POLICY

21.     Selective issued a commercial liability insurance policy numbered S 2689079, in effect for the period February 2, 2025 to February 1, 2026, to named insureds "BOJ of Western, NC, LLC Big South Restaurant Group LLC, dba Rigsby's Smoked Burgers, Wings & Grill" (the "Selective Policy" or "Policy").  A true and correct copy of the Policy is appended hereto as **Exhibit B.**

22.     The Selective Policy, pursuant to separate coverage parts, affords commercial general liability ("CGL") coverage, commercial automobile coverage, cyber liability coverage and commercial umbrella ("Umbrella") coverage.

23.     The Selective Policy includes a Schedule of Locations that identifies three locations in South Carolina corresponding to the locations of three Rigsby's SC Restaurants.

24.     The Policy's CGL coverage part extends coverage to sums the insured becomes legally obligated to pay as damages because of "bodily injury" to which the insurance applies. Further, Selective has the right and duty to defend the insured against any "suit" seeking those damages but has no duty to defend against any "suit" seeking damages for "bodily injury" to which the insurance does not apply.

25.     The insurance afforded by the Policy's CGL coverage part applies to "bodily injury" only if, among other things, the "bodily injury" is caused by an "occurrence" and occurs

during the policy period and, prior to the policy period, no applicable insured or "employee" knew that the "bodily injury" had occurred in whole or in part.

26.    The Policy's CGL coverage part defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

27.    The Policy's CGL coverage part contains an Expected or Intended Injury Exclusion, which excludes coverage for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."

28.    The Policy's CGL coverage part includes an exclusion for "Employer's Liability" ("EL Exclusion") which provides that the insurance does not apply to "bodily injury" to:

    **(1)** An "employee" of the insured arising out of and in the course of:

        **(a)** Employment by the insured; or

        **(b)** Performing duties related to the conduct of the insured's business. . . .

This exclusion further provides that it applies "whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury."

29.    By endorsement, the CGL coverage part includes an "Employment-Related Practices Exclusion" ("ERP Exclusion") that precludes coverage for, among other things, "'bodily injury' to . . . [a] person arising out of any . . .**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person . . . ." The exclusion applies "**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person; **(2)** Whether the insured may be liable as an employer or in any other capacity; and **(3)** To any

obligation to share damages with or repay someone else who must pay damages because of the injury."

30.     The Policy contains a "Designated Location(s) General Aggregate Limit" endorsement ("Designated Locations Aggregate") that applies to the CGL Coverage Part and, among other things, creates a separate Designated Location General Aggregate Limit applicable to each of the three Rigsby's SC Restaurant locations listed in the Policy's Schedule of Locations.

31.     The Policy's Commercial Umbrella Liability Coverage ("Umbrella Coverage") affords coverage for "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of, among other things, "bodily injury" to which the insurance applies.  Further, Selective has the right and duty to defend the insured against any "suit" seeking those damages when "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted.

32.     The Umbrella Coverage applies to "bodily injury" only if, among other things, the "bodily injury" is caused by an "occurrence" and occurs during the policy period and, prior to the policy period, no applicable insured or "employee" knew that the "bodily injury" had occurred in whole or in part.

33.     The Umbrella Coverage defines "underlying insurance" as "any policies of insurance listed in the Declarations under the section titled Schedule of Underlying Insurance and Limits." The applicable Schedule identifies as underlying insurance the Selective Policy's CGL and Automobile Liability coverages.

34.     The Umbrella Coverage defines "retained limit" as "the greater of: **a.** The total of the limits shown in the Declarations for the coverage(s) in question, and the limits of any other

7

insurance not shown in the declarations that is valid and collectible; or **b.** The limit shown in the Declarations as the 'self-retained limit'.  However, 'retained limit' does not mean any 'sub-limit'."

35.      "Occurrence" is defined in the Umbrella coverage part as "an accident including continuous or repeated exposure to substantially the same general harmful conditions that result in 'bodily injury' or 'property damage.'"

36.      The Umbrella coverage part contains an Expected or Intended Injury Exclusion, which excludes coverage for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."

37.      An "Employer's Liability Exclusion" ("Umbrella EL Exclusion") applicable to the Umbrella Coverage provides that the coverage does not apply to "bodily injury" to "[a]n employee of the insured arising out of and in the course of employment by the insured. . .."

38.      By endorsement, the Umbrella Coverage part contains an "Exclusion -- Employment Practices Liability" ("Umbrella EPL Exclusion") which excludes coverage for "any liability for any claim based upon, arising out of, directly or indirectly resulting from 'employment practices wrongful acts', whether or not such coverage is provided for by the 'underlying insurance'." The exclusion applies "whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury."   "Employment Practices Wrongful Acts" is defined to include "any of the following employment related acts: if alleged by or on behalf of a claimant:"

* * *

**e**.  negligent reassignment, hiring, supervision, evaluation, training, or retention;

* * *

**h.**  sexual or workplace harassment;

\* \* \*

**j**. failure to prevent the existence of an abusive or hostile work environment;

\* \* \*

39.     The Selective Policy was procured from Selective by BOJ's agent, USI Insurance Services LLC (the "Producer"), acting on behalf of the Insured.

40.     In applying for the Policy on behalf of the Insured, the Producer requested liability coverage solely for certain Rigsby's restaurants located in South Carolina (the "Rigsby's SC Restaurants").

41.     In applying for the Policy on behalf of the Insured, the Producer did not request coverage in connection with the numerous Bojangles restaurants operated by BOJ in North Carolina and elsewhere (the "Bojangles Stores"). In fact, for the prior 2024-2025 coverage period, Selective had expressly declined to insure the Bojangles Stores and, upon information and belief, both the Producer and the Insured were aware of that fact when asking Selective to underwrite the liability coverage for the Rigsby's SC Restaurants.

42.     In applying for the Policy on behalf of the Insured, the Producer initially spoke by telephone with Selective's underwriter to inquire as to Selective's willingness to underwrite liability insurance applicable to the Rigsby's SC Restaurants and separate from coverage purchased from other insurers applicable to the Bojangles Stores. The Producer explained that she was inquiring of Selective -- one of a limited number of insurers willing to underwrite a liquor liability risk in South Carolina -- because the subject Rigsby's SC Restaurants serve alcohol.

43.     Following the phone discussion referenced in the foregoing paragraph, the Producer sent Selective's underwriter an email containing a subject line of "Bojangles of Western North Carolina Submission Exp. 2-1-2025 – Additional data – Rigsby's Separation" and the

9

following text: "Here are the locations we discussed. If you could run the locations and let me know if this is a fit I would appreciate it. If it is a fit I will be happy to send the full submission, loss runs and additional details."

44. The Producer's email referenced in the foregoing paragraph attached an application form and a spreadsheet, both of which identified three Rigsby's restaurants located in South Carolina and did not include any information about any of the Insured's Bojangles Stores.

45. With the exception of the Insured's loss run information, which could not be broken down by location, all of the information submitted to Selective by the Producer and/or the Insured in connection with the application, negotiation and procurement of the Selective Policy concerned only the Rigsby's SC Restaurants.

46. The discussions between the Producer and Selective's underwriter during the application process for the Policy included a question from the underwriter as to whether the Insured also required property coverage for the Rigsby's SC Restaurants for which liability coverage had been requested. The Producer responded: "I am good either way. If you need the property I will gladly move it. If you don't want it I am good with leaving it on the monoline property for the whole restaurant group."

47. When providing the Producer with the premium quotation for the Policy prior to the Policy's issuance, Selective's underwriter described that premium as the "GL premium for the Rigsby locations."

48. As reflected by the entirely of Producer's communications with and submissions to Selective in the application, negotiation and procurement process, at the time of the Policy's issuance, the Insured intended for the Selective Policy's coverage to apply only to liability losses

10

arising from the Rigsby's SC Restaurants and not losses arising from the Insured's Bojangles Stores.

49. At the time of the Policy's issuance, Selective intended for the Policy's coverage to apply only to liability losses arising from the Rigsby's SC Restaurants and not losses arising from the Bojangles Stores.

50. At the time of Policy issuance, Selective and the Insured mutually intended for the Policy's coverage to apply only to liability losses arising from the Rigsby's SC Restaurants and not to losses arising from the Bojangles Stores.

51. Selective issued the Selective Policy in reliance upon the Producer's representations on behalf of the Insured during the application process that the Policy was sought for the purpose of covering only liability losses arising from the Rigsby's SC Restaurants.

52. If the Insured had not represented to Selective that it was seeking coverage only for liability losses arising out of the Rigsby's SC Restaurants, and had instead explained it was seeking coverage for the Insured's Bojangles Stores as well, Selective would not have issued the Policy, if at all, with the terms and conditions it contains at the premium charged.

53. The Parties' mutual intent that the Policy apply only to liability losses arising from the Rigsby's SC Restaurants is reflected in various Policy documents, including but not limited to, the Policy's Schedule of Locations, the inclusion of the Rigsby's "DBA" in the Named Insured designation, numerous endorsements setting forth "South Carolina Changes," and the Designated Location(s) Aggregate endorsement referenced above

54. Notwithstanding the portions of the Policy referenced in the foregoing paragraph, the Policy as issued does not include an endorsement that, by its express terms, documents

Selective's and the Insured's mutual intent that the Policy extend only to liability losses arising from the Rigsby's SC Restaurants.

55.     It was not until BOJ's tender of the Underlying Lawsuit as outlined below that Selective became aware that BOJ contends – contrary to its representations in the policy application process – that the Selective Policy extends coverage other than in connection with the Rigby's SC Restaurants.

## THE TENDER OF THE UNDERLYING LAWSUIT

56.     On or around July 11, 2025, the Producer tendered the Underlying Lawsuit to Selective.

57.     Upon information and belief, the Producer also tendered the Underlying Lawsuit to various other insurance carriers that issued policies affording liability coverage in connection with the insured's Bojangles Stores and at least one of those carriers has agreed to afford a defense to BOJ and Mr. Godey subject to a reservation of rights.

58.     Following tender of the Underlying Lawsuit, Selective pointed out to the Producer that the Selective Policy was not intended to cover liabilities arising from BOJ's Bojangles Stores and requested that the Producer withdraw the tender.

59.     The Producer refused Selective's request to withdraw the tender of the Underlying Lawsuit and demanded that Selective issue a "formal" coverage position.

60.     Selective has determined that it owes no coverage under the Policy to either BOJ or Godey in connection with the Underlying Lawsuit because the EL Exclusion and ERP Exclusion preclude coverage under the CGL coverage part and the Umbrella EL Exclusion and the Umbrella ELP Exclusion exclude coverage under the Umbrella coverage part for the claims asserted in the Underlying Complaint.

61. Selective has requested that BOJ withdraw its tender, and BOJ has failed to do so.

62. Selective has accordingly advised BOJ and Godey that it will participate in BOJ and Godey's defense of the Underlying Lawsuit under a full reservation of rights, and Selective is filing this action to secure a judicial declaration endorsing the correctness of that position that it owes no duty to defend or indemnify BOJ or Godey in the Underlying Lawsuit.

63. Further, based on BOJ's refusal to withdraw the tender of the Underlying Lawsuit, Selective is now aware of the need to reform the Policy to clarify the parties' mutual intent at the time of contracting that the Policy cover only liability losses arising from the Rigsby's SC Restaurants. Selective thus seeks a declaration from this Court that it is entitled to such reformation of the Policy, and that the Policy is deemed so reformed, effective as of the Policy's inception date.

## FOR A FIRST DECLARATION

64. Coverage A – Bodily Injury and Property Damage Liability is the only coverage afforded by the Policy's CGL coverage part that is even conceivably applicable to the Underlying Lawsuit.

65. Coverage A – Bodily Injury and Property Damage Liability applies to "bodily injury" or "property damage" only if such injury or damage is "caused by an 'occurrence' that takes place in the 'coverage territory.'"

66. Likewise, the Policy's Umbrella coverage part provides coverage for "bodily injury" or "property damage" only if "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes in the coverage territory

67. The Policy's CGL coverage part defines "occurrence" as an "accident including repeated or continuous exposure to substantially the same general harmful conditions."

13

68. The Policy's Umbrella coverage part defines "occurrence," in relevant part, to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions that result in 'bodily injury' or 'property damage.'"

69. Deliberate, harmful conduct does not constitute an "occurrence" within the meaning of the Policy.

70. The Underlying Complaint alleges that Dylan Sain "openly and brazenly used his position of authority … to sexually abuse and exploit [the Minor Plaintiffs]."

71. The Underlying Complaint alleges that Dylan Sain sexually abused and exploited Minor Plaintiffs "with the knowledge of other employees – including other employees in supervisory positions."

72. The Underlying Complaint alleges that BOJ and Godey had "actual knowledge of the abuse and exploitation" but "did nothing to protect [Minor Plaintiffs] from its/their pedophile employee."

73. The Underlying Complaint alleges that BOJ's conduct was "willful and/or wanton and done in conscious and flagrant disregard of and indifference to the rights and safety of [Minor Plaintiffs]."

74. The Underlying Complaint alleges that "the officers, directors, and/or managers of [BOJ] participated in or condoned the conduct" engaged in by Sain.

75. The Underlying Complaint alleges that BOJ and Godey knew that Sain was sexually abusing and exploiting Minor Plaintiffs and made an informed choice to do nothing.

76. BOJ's and Godey's alleged conduct does not constitute an "occurrence" as the Policy defines the term.

77.     The Underlying Complaint does not allege any "'bodily injury … caused by an 'occurrence'" as required to trigger coverage under the Policy's CGL or Umbrella coverage parts

78.     Therefore, Selective is entitled to a declaration that the Policy does not provide CGL coverage or Umbrella coverage for the claims and damages asserted in the Underlying Lawsuit.

## FOR A SECOND DECLARATION
### (In the Alternative to Count I)

79.     Selective repeats and realleges the allegations above as if set forth fully verbatim herein.

80.     The Policy's CGL coverage part and Umbrella coverage part contain identical Expected or Intended Injury Exclusions, which exclude coverage for "'bodily injury' … expected or intended from the standpoint of the insured."

81.     The Underlying Complaint alleges that BOJ and Godey had "actual knowledge of the abuse and exploitation" but "did nothing to protect [Minor Plaintiffs] from its/their pedophile employee."

82.     The Underlying Compliant alleges that BOJ and Godey acted in "conscious and flagrant disregard of and indifference to the rights and safety of [Minor Plaintiffs]."

83.     The Underlying Compliant alleges that "the officers, directors, and/or managers of [BOJ] participated in or condoned the conduct" engaged in by Sain.

84.     Minor Plaintiffs' "bodily injuries" were expected or intended by BOJ and Godey.

85.     Therefore, Selective is entitled to a declaration that the  Policy does not provide CGL coverage or Umbrella coverage for the claims and damages asserted in the Underlying Lawsuit.

15

86.      Selective repeats and realleges the allegations above as if set forth fully verbatim herein.

87.      The EL Exclusion applicable to the Policy's CGL coverage excludes coverage for "bodily injury" to an "employee" of the insured "arising out of and in the course of . . . [e]mployment by the insured. . . ."

88.      The Underlying Complaint alleges that Minor Plaintiffs were employed by BOJ and were subjected to sexual harassment by their manager at work.

89.       Any "bodily injury" for which Minor Plaintiffs seek recompense in the Underlying Complaint arose out of and in the course of Minor Plaintiffs' employment by BOJ, such that the EL Exclusion precludes coverage for BOJ and Godey under the Policy's CGL coverage part.

90.      In addition, the ERP Exclusion applicable to the Policy's CGL coverage part excludes coverage for, among other things, "'bodily injury' to . . . [a] person arising out of any . . .**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person . . .."

91.      The Underlying Complaint alleges that Minor Plaintiffs were employed by BOJ and were subjected to sexual harassment by their manager at work.

92.      The Underlying Complaint further alleges that Minor Plaintiffs' manager used his position of authority as well as threats and intimidation to commit the alleged sexual harassment.

93.       The Underlying Complaint further alleges negligence on the part of BOJ and Godey by: failing to adequately monitor and supervise Minor Plaintiffs and Sain; failing to adequately train their employees or agents on the protocols for recognizing, reporting and

preventing sexual abuse and sexual harassment in the workplace; failing to protect Minor Plaintiffs from being sexually abused and exploited in the workplace by one of their managers; failing to intervene when they knew or should have known of the sexual abuse and exploitation of Minor Plaintiffs by their manager; and failing to report the abuse and exploitation of Minor Plaintiffs as required by law.

94.     Any "bodily injury" for which Minor Plaintiffs seek recompense in the Underlying Complaint arose out of "[e]mployment-related practices, policies, acts or omissions . . ." such that the ERP Exclusion precludes coverage for BOJ and Godey under the Policy's CGL coverage part.

95.     Therefore, Selective is entitled to a declaration that the Policy does not provide CGL coverage for the claims and damages asserted in the Underlying Lawsuit.

### FOR A FOURTH DECLARATION
**(In the Alternative to Count I)**

96.     Selective repeats and realleges the allegations above as if set forth fully verbatim herein.

97.     The Umbrella EL Exclusion applicable to the Policy's Umbrella coverage part provides that the coverage does not apply to "bodily injury" to "[a]n employee of the insured arising out of and in the course of employment by the insured. . .."

98.     The Underlying Complaint alleges that Minor Plaintiffs were employed by BOJ and were subjected to sexual harassment by their manager during work.

99.     Any "bodily injury" for which Minor Plaintiffs seek recompense in the Underlying Complaint arose out of and in the course of Minor Plaintiffs' employment by BOJ, such that the Umbrella EL Exclusion precludes coverage for BOJ and Godey under the Policy's Umbrella coverage part.

17

100. In addition, the Umbrella EPL Exclusion applicable to the Policy's Umbrella coverage part excludes coverage for "any liability for any claim based upon, arising out of, directly or indirectly resulting from 'employment practices wrongful acts', whether or not such coverage is provided for by the 'underlying insurance'."

101. "Employment Practices Wrongful Acts" is defined, in pertinent part, to include "any of the following employment related acts: if alleged by or on behalf of a claimant: * * * **e.** negligent reassignment, hiring, supervision, evaluation, training, or retention; * * * **h.** sexual or workplace harassment; * * * **j.** failure to prevent the existence of an abusive or hostile work environment. . .."

102. The Underlying Complaint alleges that Minor Plaintiffs were employed by BOJ and were subjected to sexual harassment by their manager during work.

103. The Underlying Complaint further alleges that Minor Plaintiffs' manager used his position of authority as well as threats and intimidation to commit the alleged sexual harassment.

104. The Underlying Complaint further alleges negligence on the part of BOJ and Godey by: failing to adequately monitor and supervise Minor Plaintiffs and Sain; failing to adequately train their employees or agents on the protocols for recognizing, reporting and preventing sexual abuse and sexual harassment in the workplace; failing to protect Minor Plaintiffs from being sexually abused and exploited in the workplace by one of their managers; failing to intervene when they knew or should have known of the sexual abuse and exploitation of Minor Plaintiffs by their manager; and failing to report the abuse and exploitation as required by law.

105. The incidents alleged in the Underlying Complaint are "based upon, arising out of, directly or indirectly resulting from" "employment practices wrongful acts" as defined by the

Policy, such that the Umbrella EPL Exclusion precludes coverage for BOJ and Godey under the Policy's Umbrella coverage part.

106.     Therefore, Selective is entitled to a declaration that the Policy does not provide Umbrella coverage for the claims and damages asserted in the Underlying Lawsuit.

<u>**FOR A FIFTH DECLARATION**</u>
**(Reformation)**
**(In the alternative to Counts I-IV)**

107.     Selective repeats and realleges the allegations above as if set forth fully verbatim herein.

108.     As outlined above, at the time of the Insured's purchase of the Policy from Selective, it was the contracting parties' mutual intent that the Policy afford coverage only for liabilities arising from the Rigsby's SC Restaurants at the locations identified the Policy's Schedule of Locations.

109.     The Policy as issued does not include an endorsement that, by its express terms, reflects Selective's and the Insured's mutual intent that the Policy's coverage extend only to liabilities arising from the subject Rigsby's SC Restaurants.

110.     The omission of the above-referenced endorsement was a mistake, and that mistake was material to the agreed-upon scope of coverage to be provided by the Policy.

111.     As a result of the contracting parties' mutual mistake, the Policy as issued does not express the parties' mutual intent at the time of contracting as to the scope of the coverage afforded by the Policy.

112.     While the Policy contains various aspects that reflect the parties' mutual intent at the time of contracting as described above, the Insured -- in refusing through the Producer to withdraw its tender of the Underlying Lawsuit to Selective – has indicated its intention to pursue

a construction of the Policy's coverage contrary the parties' mutual intent regarding the scope of coverage at the time of contracting.

113. Selective thus seeks and is entitled to a declaration that the Policy shall be reformed, retroactive to inception, to include an endorsement providing explicitly that all coverages afforded under the Policy apply only to liability losses arising out of the Rigsby's SC Restaurants found at the locations identified in the Policy's Schedule of Locations.

114. Selective is further entitled to a declaration that it owes no obligation under the Policy, as reformed, to defend either BOJ or Godey in connection with the Underlying Lawsuit.

**WHEREFORE**, Selective respectfully requests that the Court enter a judgment:

(i)     declaring that Selective owes no duty under the Policy as issued to defend BOJ or Godey in connection with the Underlying Lawsuit;

(ii)    declaring that the Policy is and shall be reformed, retroactive to inception, to include an endorsement providing that all coverages afforded under the Policy apply only to liability losses arising out of the Rigsby's SC Restaurants, the locations of which are identified in the Policy's Schedule of Locations;

(iii)   declaring that Selective owes no duty under the Policy as reformed to defend BOJ or Godey in connection with the Underlying Lawsuit;

(iv)    for such other and further relief as the Court deems just and proper.

Respectfully submitted,

MURPHY & GRANTLAND, P.A.

*s/ Wesley B. Sawyer*
Wesley B. Sawyer, Esq. (Fed. I.D. No.: 11244)
N.C. Bar No. 49504
P.O. Box 6648
Columbia, South Carolina
(803) 782-4100

20

wsawyer@murphygrantland.com
*Attorneys for Selective Insurance Company of America*

Columbia, South Carolina
March 12, 2026